JOSEPH A. BROWN & others *vs.* FIRST NATIONAL BANK OF BOSTON.

Suffolk.    November 18, 1913. — January 8, 1914.

Present: RUGG, C. J., HAMMOND, LORING, & BRALEY, JJ.

*Bank.    Bills and Notes.    Municipal Corporations,* Officers and Agents.

Where a bank, whose note-teller receives in behalf of one of its depositors the check of a third person to be collected and applied to the payment of a note of the depositor made payable at that bank, does not credit the amount of such check to its depositor's account, but treats it as the equivalent of cash held by the bank to meet the note, the bank in applying the proceeds of the check to the payment of the note does not lend the amount of money thus paid to its depositor; and therefore, if the check was obtained from its drawer through the fraud of one who by the misuse of his apparent authority indorsed it to the bank, the drawer of the check cannot maintain an action against the bank for a conversion of the check or for the amount of the proceeds of the check as money had and received to the plaintiff's use.

It is within the power of the treasurer of a city or town to indorse to a bank at which a note of the city or town is made payable a certified check payable to the city or town, in order to provide the bank with funds to pay the note; and consequently such an indorsement, although made fraudulently, is within the apparent authority of a city treasurer.

LORING, J.    This is another action growing out of the frauds of J. V. Felker while treasurer of the city of Newburyport.   One of the devices resorted to by Felker to carry out or cover up his thefts was to issue duplicate notes under votes of the city council to borrow money in anticipation of taxes.   The proceeds of one set of these notes went in payment of the city's obligations, while the proceeds of the duplicate set were used by Felker for his own benefit.   To meet such a note for $80,000, due April 13, 1906, fraudulently issued by him as a note of the city, Felker, just before April 13, 1906, arranged for the discount by the plaintiffs of five notes of the city amounting to $80,000.   For convenience we shall speak of these as notes of the city.   To carry this arrangement into effect Felker, on April 13, 1906, delivered to the plaintiffs the five notes of the city aggregating $80,000.   One of these five notes was the note on which the plaintiffs in this action unsuccessfully sought to recover from the city of Newburyport in *Brown* v. *Newburyport,* 209 Mass. 259.

On delivery of the five notes to the plaintiffs Felker received from them a check payable to the city of Newburyport in the sum of $78,133.55 (the net proceeds of the discount of the five notes), dated on that day (April 13, 1906), drawn by them on the National Bank of Commerce and certified by that bank.

The city of Newburyport for many years had had an account with the First National Bank of Boston (the defendant in this action), and it had been the custom of the city to make notes which it had put on the market payable at that bank. The $80,-000 note fraudulently issued by Felker, due April 13, 1906, by its terms was payable at the defendant bank.

After receiving from the plaintiffs the check for $78,133.55, Felker went to the banking rooms of the defendant bank and delivered to its note-teller the plaintiffs' check for $78,133.55, indorsed (in the proper form) by the city of Newburyport by Felker as treasurer. At the same time he delivered to the note-teller a check for $1,866.45, drawn on the city of Newburyport's account with the defendant, which was less than the amount then to the credit of that account. On delivering these checks to him Felker told the note-teller "that there was a note of the city of Newburyport for eighty thousand dollars ($80,000) payable that day at" the defendant bank, "and that he had come to take care of said note." The note-teller "knew him [Felker] as the city treasurer of Newburyport and through whom [him] said Felker had previously paid notes of said city made payable at said First National Bank."

Later on the same day the fraudulent note for $80,000 was presented for payment by the National Bank of the Republic in which it had been deposited for collection, and was paid by a cashier's check of the defendant bank for $80,000 payable to the Bank of the Republic. Afterward on the same day, the $80,000 note was mailed to Felker. On the next day the plaintiffs' check for $78,133.55 and the cashier's check for $80,000 were paid through the clearing house.

After it was decided by this court in *Brown* v. *Newburyport, ubi supra,* that the note there sued on (being one of the five, all of like tenor, sold by Felker to the plaintiffs) was void on its face, this action was brought by the plaintiffs on the ground that their check for $78,133.55, payable to the city of Newburyport, never

had reached the payee; that as a result of that (1) it remained their property, and (2) that the defendant bank in collecting it had converted it to its own use, or, if not thereby guilty of a conversion, that it had received the $78,133.55 so collected as money had and received to the plaintiffs' use.*

The plaintiffs' main argument in support of this contention is that when the defendant bank, on April 14, 1906, collected through the clearing house the plaintiffs' check for $78,133.55, it collected it not for the account of the city of Newburyport, but on its own account; that it collected it on its own account because it had undertaken to lend the amount of the check to the city the day before; and that it is settled that a town or city treasurer has no authority by virtue of his office to borrow money on behalf of the town or city of which he is treasurer. As to which see *Railroad National Bank* v. *Lowell,* 109 Mass. 214.

It may be conceded that this contention is correct if the defendant bank lent the city of Newburyport the $78,133.55 which it paid out on its account on April 13. But we are of opinion that it did not do so.

It appears from the agreed facts that the defendant bank paid out the face amount of the check, namely, $78,133.55; that is to say, nothing was deducted by way of discount nor charged by way of interest. Further it is stated in the agreed facts that it is not the practice of the defendant bank, nor is it the custom of banks in Boston generally, to enter on the deposit account of their customers "funds" brought to the note-teller to be used in payment of depositors' notes made payable by them at the bank. If that had been the practice of the defendant bank, or the custom of other banks in Boston, it would have helped to give color to the plaintiffs' argument that in the case at bar the defendant bank had lent the city of Newburyport the face of the plaintiffs' check for $78,133.55.

But the practice of the defendant bank and the custom of Boston banks generally in this connection is not an accident. It results from the true character of the transaction which takes place when a depositor who has made his note payable at his bank

---

* The case was submitted on the pleadings and an agreed statement of facts to *Wait,* J., who ruled that the plaintiffs were not entitled to recover, and reported the case for determination by this court.

brings "funds" to the note-teller of the bank to provide for the payment of the note. The reason why "funds" brought to a bank to be used in payment of a depositor's note there made payable were not formerly and are not now entered on the depositor's account is because such "funds" are handed to the bank not as the funds of the depositor but as the "funds" of the bank. If such "funds," when brought to the bank, had been put to the credit of the depositor (before the enactment of the negotiable instruments act, now R. L. c. 73, § 104, which will be considered later on), the depositor would have had to draw his check in favor of the bank to make them "funds" of the bank which it could use in paying the depositor's note. *National Exchange Bank v. National Bank of North America*, 132 Mass. 147, 151, 152. See however in this connection *Elliott* v. *Worcester Trust Co.* 189 Mass. 542, 545. It was because "funds" brought to a bank to be used in paying a depositor's note made payable at the bank had to be the "funds" of the bank and not "funds" of the depositor that such "funds" were not entered to the credit of the depositor.

The negotiable instruments act has changed the rule of law which originally gave rise to the practice of the defendant bank and the custom of Boston banks in general not to enter on the depositor's account payments made to it to enable it to pay its depositor's notes made payable there. By R. L. c. 73, § 104, the act of making a note payable at a bank is of itself an order on the bank to pay it out of the maker's funds on deposit in the bank. That being so, the transaction which takes place when money is brought to a bank by a depositor to be used by the bank in paying the depositor's note there made payable, can now be carried out in either one of two ways: (First) the money so paid can be put to the maker's deposit account and then used to pay the note under R. L. c. 73, § 104, or (second) the former method of carrying through the transaction can still be adopted, namely, to accept the payment as a payment to the bank of funds to be used by it in making the payment for the maker of the note. It appears from the statement as to the matter made in the agreed facts that it is the practice and custom in Boston, since the enactment of the negotiable instruments act, to carry through the transaction as it was carried through before that statute was enacted. That is to say, it is still the practice of the defendant bank and

the custom of banks in Boston generally to treat funds brought to a bank to be used by it in paying a note made payable there as a payment to it (the bank) of funds to be used by it in paying the maker's note made payable there in place of treating those funds as funds of the depositor which the bank can use in payment of the depositor's note by force of R. L. c. 73, § 104.

It follows that the check for $78,133.55 was delivered to and accepted by the defendant bank as a payment to it of the funds necessary to enable it to pay the note for $80,000 payable on the same day at the defendant bank. The check was delivered to the defendant bank as a payment to it of "funds" to the amount of the face of the check.

In business transactions debts are not paid by the delivery of coin or bills which are legal tender. Where small amounts are due, bank bills not legal tender or the bare check of the debtor often are given and accepted in payment. In larger transactions certified checks, or cashier's checks, and sometimes certificates of deposit are used. See in this connection *Pierce* v. *State National Bank*, 215 Mass. 18, 19. In the case at bar the certified check for $78,133.55 was delivered to the defendant bank not to be discounted but as a payment to it of so much cash to enable it to pay the $80,000 note out of the funds so provided, and it was accepted by the defendant as the equivalent of cash.

It follows that the first argument made by the plaintiffs in support of their contention is not well taken.

The plaintiffs also rely on a statement made by this court in *Franklin Savings Bank* v. *International Trust Co.* 215 Mass. 231. That was a case where a dishonest town treasurer, after selling to a broker what turned out to be a forged note of the town, indorsed the town's name on the check given in payment therefor and delivered the check to the purchaser of the note. The purchaser deposited it to its credit with the defendant trust company, and it subsequently used the proceeds for its own benefit. This court decided that the indorsement was invalid and that the invalidity of it was apparent on the face of the transaction. In that connection it said: "The check was made payable to the town of Framingham and could be put into circulation only by the indorsement of the town acting by its agent duly authorized for that purpose. The only indorsement in the name of the town was

made by Lombard, the treasurer, in these words: 'Town of Framingham, by John B. Lombard, Treasurer.' But he as treasurer had no power to indorse the check for circulation. His only power was to indorse it for deposit for collection to the account of the town." That statement is to be construed in the connection in which it was made. There is nothing in the decision in that case which is inconsistent with the conclusion reached in the case at bar.

For the reasons already stated we are of opinion that it is within the power of a town or city treasurer to indorse to the bank at which a note of the town or city is made payable a certified check made payable to the town or city, in order to provide the bank with the funds necessary to pay the note. In the case at bar the defendant as well as the plaintiffs acted in good faith on the supposition that Felker was acting honestly, and the validity of the indorsement here in question depends upon the extent of Felker's apparent authority as treasurer of the city.

It follows that the check for $78,133.55, having been indorsed by one who had apparent authority to indorse it, and for a purpose within his apparent authority, ceased to be the property of the plaintiffs who drew it; and by the terms of the report judgment must be entered for the defendant. It is

*So ordered.*

*J. L. Thorndike, (R. G. Dodge* with him,) for the plaintiffs.
*N. W. Bingham, Jr., & A. R. Graustein,* for the defendant.

-----

## MEMORANDA.

On the fifteenth day of December, 1913, the Honorable JAMES MADISON MORTON resigned the office of a Justice of this court, which he had held since the seventeenth day of September, 1890.

On the thirty-first day of December, 1913, the Honorable JOHN CRAWFORD CROSBY, one of the Justices of the Superior Court, was appointed a Justice of this court. He first sat with this court at the sitting of the court at Boston on the twelfth day of January, 1914.