STONE & WEBSTER ENGINEERING CORPORATION *vs.* THE
FIRST NATIONAL BANK & TRUST COMPANY OF GREENFIELD.

Suffolk.   May 10, 1962. — July 16, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Bills and Notes,* Forgery, Indorsement, Check. *Forgery. Bank and Bank-
ing. Conversion. Contract,* Implied. *Pleading, Civil,* Declaration. *Cir-
cuity of Action. Negligence,* In cashing check.

In an action with a declaration containing several counts for the same
cause of action respecting a check drawn by the plaintiff and "cashed"
by the defendant, where the check was filed by order of court, the
check must be treated as part of each count on demurrer. [4]

Except by express terms, the allegations of one of several counts in a
declaration are not to be imported into the other counts, even though
all the counts are for the same cause of action. [4]

An action for money had and received did not lie by the drawer of a
check against a collecting bank which "cashed" the check for an em-
ployee of the plaintiff who had forged the payee's indorsement there-
before it could be delivered to the payee, and which guaranteed the
indorsements and forwarded the check to the drawee and was paid
the amount thereof by the drawee; a contention that when the drawee
paid the amount of the check to the defendant and charged such amount
against the plaintiff's deposit with the drawee the plaintiff was de-
prived of a credit, and the defendant received funds which "in equity
and good conscience" belonged to the plaintiff, was without merit.
[4–5]

2 345 Mass. 1

Stone & Webster Engineering Corp. *v.* First National Bank & Trust Co.

A bank which paid the amount of a check to an employee of the drawer who had forged the payee's indorsement thereon before it could be delivered to the payee and which collected such amount from the drawee was not a "payor bank," defined in the Uniform Commercial Code, G. L. c. 106, § 4–105 (b), as "a bank by which an item is payable as drawn or accepted," and was not liable to the drawer for conversion under § 3–419 (1) (c) for having "paid on a forged indorsement." [5–6]

The drawer of a check had no right of action for conversion against a collecting bank which "cashed" the check for an employee of the drawer who had forged the payee's indorsement thereon before it could be delivered to the payee and which forwarded the check to the drawee and was paid the amount thereof by the drawee; to allow an action by the drawer directly against the collecting bank in order to avoid an action by the drawer against the drawee, which charged the amount of the check to the drawer's checking account, and an action by the drawee against the collecting bank would render difficult the assertion of defences available to the drawee and the collecting bank. [7–8, 8–10]

A demurrer was rightly sustained to a count of a declaration alleging that the defendant converted "checks which were the property of the plaintiff" where the action was by the drawer of checks apparently indorsed by the payee against a collecting bank which "cashed" the checks; no right of ownership in the plaintiff was apparent. [10]

There was no error in sustaining a demurrer to a count of the declaration in an action by the drawer of checks against a collecting bank alleging that the defendant "by reason of its negligence in cashing [the] checks with forged indorsements thereon damaged the plaintiff in the . . . amount of said checks." [10–11]

CONTRACT OR TORT. Writ in the Superior Court dated November 24, 1961.

The action was heard by *Lurie,* J., on demurrer.

*Joseph P. Rooney* (*Bancroft R. Wheeler* with him) for the plaintiff.

*Warren G. Reed* (*William A. King* with him) for the defendant.

WILKINS, C.J. In this action of contract or tort in four counts for the same cause of action a demurrer to the declaration was sustained, and the plaintiff, described in the writ as having a usual place of business in Boston, appealed. G. L. (Ter. Ed.) c. 231, § 96. The questions argued concern the rights of the drawer against a collecting bank which "cashed" checks for an individual who had forged the payee's indorsement on the checks, which were never delivered to the payee.

345 Mass. 1                                                    3

Stone & Webster Engineering Corp. v. First National Bank & Trust Co.

In the first count, which is in contract, the plaintiff alleges that between January 1, 1960, and May 15, 1960, it was indebted at various times to Westinghouse Electric Corporation (Westinghouse) for goods and services furnished to it by Westinghouse; that in order to pay the indebtedness the plaintiff drew three checks within that period on its checking account in The First National Bank of Boston (First National) payable to Westinghouse in the total amount of $64,755.44; that before delivery of the checks to Westinghouse an employee of the plaintiff in possession of the checks forged the indorsement of Westinghouse and presented the checks to the defendant; that the defendant "cashed" the checks and delivered the proceeds to the plaintiff's employee who devoted the proceeds to his own use; that the defendant forwarded the checks to First National and received from First National the full amounts thereof; and that First National charged the account of the plaintiff with the full amounts of the checks and has refused to recredit the plaintiff's checking account; wherefore the defendant owes the plaintiff $64,755.44 with interest.

Count 2, also in contract, is on an account annexed for money owed, namely $64,755.44, the proceeds of checks of the plaintiff "cashed" by the defendant on forged indorsements between January 1, 1960, and May 15, 1960.

Counts 3 and 4 in tort are respectively for conversion of the checks and for negligence in "cashing" the checks with forged indorsements.

By order, copies of the three checks were filed in court. The checks are respectively dated at Rowe in this Commonwealth on January 5, March 8, and May 9, 1960. Their respective amounts are $36,982.86, $10,416.58, and $17,355. They are payable to the order of "Westinghouse Electric Corporation, 10 High Street, Boston." The first two checks are indorsed in typewriting, "For Deposit Only: Westinghouse Electric Corporation By: Mr. O. D. Costine, Treasury Representative" followed by an ink signature "O. D. Costine." The third check is indorsed in typewriting, "Westinghouse Electric Corporation By: [Sgd.]

4                                                     345 Mass. 1

Stone & Webster Engineering Corp. *v.* First National Bank & Trust Co.

O. D. Costine Treasury Representative.'' All three checks also bear the indorsement by rubber stamp, ''Pay to the order of any bank, banker or trust co. prior indorsements guaranteed . . . [date][1] The First National Bank & Trust Co. Greenfield, Mass.''

The demurrer, in so far as it has been argued, is to each count for failure to state a cause of action.

The state of the pleadings calls for comment. The checks filed by order of court must be treated as part of each count. The ground of that order does not appear. It may have been on analogy to G. L. (Ter. Ed.) c. 231, § 7, Eleventh.[2] The allegations of count 1 cannot be read into the other three counts. The counts are separate and independent, and the allegations of one count will not be imported into another except by express terms. *Kenney* v. *Boston & Maine R.R.* 301 Mass. 271, 274. *Herman* v. *Fine,* 314 Mass. 67, 69–70. This is so even though the other count is alleged to be for the same cause of action. *Evatt* v. *Willard D. Martin, Inc.* 302 Mass. 414, 417. *McGrath* v. *Sullivan,* 303 Mass. 327, 329.

1. Count 1, the plaintiff contends, is for money had and received. We shall so regard it. ''An action for money had and received lies to recover money which should not in justice be retained by the defendant, and which in equity and good conscience should be paid to the plaintiff.'' *Cobb* v. *Library Bureau,* 268 Mass. 311, 316. *Adams* v. *First Natl. Bank,* 321 Mass. 693, 694. *Trafton* v. *Custeau,* 338 Mass. 305, 308.

The defendant has no money in its hands which belongs to the plaintiff. The latter had no right in the proceeds of its own check payable to Westinghouse. Not being a holder or an agent for a holder, it could not have presented the check to the drawee for payment. Uniform Commercial

---

[1] The respective dates are January 13, March 9, and May 11, 1960. Each check bears the stamped indorsement of the Federal Reserve Bank of Boston and on its face the paid stamp of The First National Bank of Boston.

[2] ''Written instruments shall be declared on by setting out a copy or such part as is relied on, or the legal effect thereof, with proper averments to describe the cause of action.'' As we read the declaration, no written instruments are declared on.

Code, enacted by St. 1957, c. 765, § 1, G. L. c. 106, §§ 3–504 (1), 1–201 (20). See Am. Law Inst. Uniform Commercial Code, 1958 Official Text with comments, § 3–419, comment 2: "A negotiable instrument is the property of the holder." See also Restatement 2d: Torts, Tent. Draft No. 3, 1958, § 241A. The plaintiff contends that "First National paid or credited the proceeds of the checks to the defendant and charged the account of the plaintiff, and consequently, the plaintiff was deprived of a credit, and the defendant received funds or a credit which 'in equity and good conscience' belonged to the plaintiff."

In our opinion this argument is a non sequitur. The plaintiff as a depositor in First National was merely in a contractual relationship of creditor and debtor. *Forastiere* v. *Springfield Inst. for Sav.* 303 Mass. 101, 103. *Krinsky* v. *Pilgrim Trust Co.* 337 Mass. 401, 405. The amounts the defendant received from First National to cover the checks "cashed" were the bank's funds and not the plaintiff's. The Uniform Commercial Code does not purport to change the relationship. See G. L. c. 106, §§ 1–103, 4–401 to 4–407. Section 3–409 (1) provides: "A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." This is the same as our prior law, which the Code repealed. See, formerly, G. L. c. 107, §§ 150, 212. Whether the plaintiff was rightfully deprived of a credit is a matter between it and the drawee, First National.

If we treat the first count as seeking to base a cause of action for money had and received upon a waiver of the tort of conversion — a matter which it is not clear is argued — the result will be the same. In this aspect the question presented is whether a drawer has a right of action for conversion against a collecting bank which handles its checks in the bank collection process. Unless there be such a right, there is no tort which can be waived.

The plaintiff relies upon the Uniform Commercial Code, G. L. c. 106, § 3–419, which provides, "(1) An instrument

is converted when . . . (c) it is paid on a forged indorsement." This, however, could not apply to the defendant, which is not a "payor bank," defined in the Code, § 4–105 (b), as "a bank by which an item is payable as drawn or accepted." See Am. Law Inst. Uniform Commercial Code, 1958 Official Text with comments, § 4–105, comments 1–3; G. L. c. 106, §§ 4–401, 4–213, 3–102 (b).

A conversion provision of the Uniform Commercial Code which might have some bearing on this case is § 3–419 (3).[1] This section implicitly recognizes that, subject to defences, including the one stated in it, a collecting bank, defined in the Code, § 4–105 (d), may be liable in conversion. In the case at bar the forged indorsements were "wholly inoperative" as the signatures of the payee, Code §§ 3–404 (1), 1–201 (43), and equally so both as to the restrictive indorsements for deposit, see § 3–205 (c), and as to the indorsement in blank, see § 3–204 (2). When the forger transferred the checks to the collecting bank, no negotiation under § 3–202 (1) occurred, because there was lacking the necessary indorsement of the payee. For the same reason, the collecting bank could not become a "holder" as defined in § 1–201 (20), and so could not become a holder in due course under § 3–302 (1). Accordingly, we assume that the collecting bank may be liable in conversion to a proper party, subject to defences, including that in § 3–419 (3). See *A. Blum Jr.'s Sons* v. *Whipple,* 194 Mass. 253, 255. But there is no explicit provision in the Code purporting to determine to whom the collecting bank may be liable, and, consequently, the drawer's right to enforce such a liability must be found elsewhere. Therefore, we conclude that the case must be decided on our own law, which, on the issue we are discussing, has been left untouched by the Uniform Commercial Code in any specific section.

---

[1] "Subject to the provisions of this chapter concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands." See Code §§ 1–201 (35); 4–201 (1).

In this Commonwealth there are two cases (decided in 1913 and 1914) the results in which embrace a ruling that there was a conversion, but in neither was the question discussed and, for aught that appears, in each the ruling seems to have been assumed without conscious appreciation of the issue here considered. *Franklin Sav. Bank* v. *International Trust Co.* 215 Mass. 231. *Quincy Mut. Fire Ins. Co.* v. *International Trust Co.* 217 Mass. 370. See *Newburyport* v. *Spear,* 204 Mass. 146, 148–149; *Brown* v. *First Natl. Bank,* 216 Mass. 298; *Phelan* v. *Atlantic Natl. Bank,* 301 Mass. 463, 468; *John T. D. Blackburn, Inc.* v. *Livermore,* 317 Mass. 20; *Kendall* v. *Fidelity Trust Co.* 230 Mass. 238. Compare *Childs, Jeffries & Co. Inc.* v. *Bright,* 283 Mass. 283. The *Franklin Sav. Bank* case cannot be distinguished on the ground of the limited powers of a city treasurer. That issue was important as charging the bank with notice of the treasurer's lack of authority to indorse but, that fact established, there was this further question as to whether there was a remedy in tort for conversion.

The authorities are hopelessly divided. We think that the preferable view is that there is no right of action. Jurisdictions denying such right are *California Mill Supply Corp.* v. *Bank of America Natl. Trust & Sav. Assn.* 36 Cal. 2d 334, 340–341, *First Natl. Bank* v. *North Jersey Trust Co.* 18 N. J. Misc. 449, 451–452, *Trojan Pub. Corp.* v. *Manufacturers Trust Co.* 298 N. Y. 771, affirming 273 App. Div. (N. Y.) 843, *Virginia-Carolina Joint Stock Land Bank* v. *First & Citizens Natl. Bank,* 197 N. C. 526, *Lavanier* v. *Cosmopolitan Bank & Trust Co.* 36 Ohio App. 285, *Land Title & Trust Co.* v. *Northwestern Natl. Bank,* 196 Pa. 230, *United States* v. *Bank of Coney Island,* 36 F. 2d 829, 830 (D. C. E. D. N. Y.). See Britton, Bills and Notes, § 144; 36 Harv. L. Rev. 879. Expressing a contrary view, but not all on the ground of conversion, are *Washington Mechanics' Sav. Bank* v. *District Title Ins. Co.* 65 F. 2d 827, 828 (Ct. App. D. C.), *Gustin-Bacon Mfg. Co.* v. *First Natl. Bank,* 306 Ill. 179, *Home Indem. Co.* v. *State Bank,* 233 Iowa, 103, *Sidles Co.* v. *Pioneer Valley Sav. Bank,* 233 Iowa, 1057, 1063, *Railroad Bldg. Loan & Sav. Assn.* v. *Bankers Mortgage Co.* 142

Kans. 564, *Levin* v. *Union Natl. Bank,* 224 Md. 603, *Life Ins. Co.* v. *Edisto Natl. Bank,* 166 S. C. 505, *National Surety Corp.* v. *City Bank & Trust Co.* 248 Wis. 32.

We state what appears to us to be the proper analysis. Had the checks been delivered to the payee Westinghouse, the defendant might have been liable for conversion to the payee.   The checks, if delivered, in the hands of the payee would have been valuable property which could have been transferred for value or presented for payment; and, had a check been dishonored, the payee would have had a right of recourse against the drawer on the instrument under § 3–413 (2).   Here the plaintiff drawer of the checks, which were never delivered to the payee (see *Gallup* v. *Barton,* 313 Mass. 379, 381), had no valuable rights in them.   Since, as we have seen, it did not have the right of a payee or subsequent holder to present them to the drawee for payment, the value of its rights was limited to the physical paper on which they were written, and was not measured by their payable amounts. *Trojan Pub. Corp.* v. *Manufacturers Trust Co.* 298 N. Y. 771, 773.   See *Judkins* v. *Tuller,* 277 Mass. 247, 250; *Massachusetts Lubricant Corp.* v. *Socony-Vacuum Oil Co. Inc.* 305 Mass. 269, 271.

The enactment of the Uniform Commercial Code opens the road for the adoption of what seems the preferable view.   An action by the drawer against the collecting bank might have some theoretical appeal as avoiding circuity of action.   See *Home Indem. Co.* v. *State Bank,* 233 Iowa, 103, 135–140.   Compare 36 Harv. L. Rev. 879.   It would have been in the interest of speedy and complete justice had the case been tried with the action by the drawer against the drawee and with an action by the drawee against the collecting bank.   See *Nichols* v. *Somerville Sav. Bank,* 333 Mass. 488, 490.   So one might ask: If the drawee is liable to the drawer and the collecting bank is liable to the drawee, why not let the drawer sue the collecting bank direct?   We believe that the answer lies in the applicable defences set up in the Code.[1]

---

[1] Cases where a payee has acquired rights in an instrument may stand on a different footing.

345 Mass. 1                                                    9

Stone & Webster Engineering Corp. *v.* First National Bank & Trust Co.

The drawer can insist that the drawee recredit his account with the amount of any unauthorized payment. Such was our common law. *Murphy* v. *Metropolitan Natl. Bank,* 191 Mass. 159, 163. *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, 405. *Barmby* v. *Merrimack Coöp. Bank,* 285 Mass. 37, 40. *Santa Maria* v. *Industrial City Bank & Banking Co.* 326 Mass. 440, 442. This is, in effect, retained by the Code. §§ 4–401 (1),[1] 4–406 (4). But the drawee has defences based upon the drawer's substantial negligence, if "contributing," or upon his duty to discover and report unauthorized signatures and alterations. §§ 3–406, 4–406. As to unauthorized indorsements, see § 4–406 (4).[2] Then, if the drawee has a valid defence which it waives or fails upon request to assert, the drawee may not assert against the collecting bank or other prior party presenting or transferring the check a claim which is based on the forged indorsement. § 4–406 (5).[3] See Am. Law Inst. Uniform Commercial Code, Official Text with comments, § 4–406, comment 6, which shows that there was no intent to change the prior law as to negligence of a customer. See *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, 407–411; *Blacker & Shepard Co.* v. *Granite Trust Co.* 284 Mass. 9, 13–14. If the drawee recredits the drawer's account and is not precluded by § 4–406 (5), it may claim against the presenting bank on the relevant warranties in §§ 3–417 and 4–207, and each transferee has rights against his transferor under those sections.

---

[1] "As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account . . . ."

[2] "Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection [1]) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration."

[3] "If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense . . . [drawee] may not assert against . . . [a] collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim."

If the drawer's rights are limited to requiring the drawee to recredit his account, the drawee will have the defences noted above and perhaps others; and the collecting bank or banks will have the defences in § 4–207 (4) [1] and § 4–406 (5), and perhaps others. If the drawer is allowed in the present case to sue the collecting bank, the assertion of the defences, for all practical purposes, would be difficult. The possibilities of such a result would tend to compel resort to litigation in every case involving a forgery of commercial paper. It is a result to be avoided.

The demurrer to count 1 was rightly sustained.

2. The second count, the plaintiff states, is for money had and received to the plaintiff's use and is covered by the argument as to count 1. We accept this interpretation of the allegations. As no new point is argued, we hold that the demurrer to the second count was also rightly sustained.

3. Count 3 is a brief count resembling the suggestion in G. L. (Ter. Ed.) c. 231, § 147, Form 11, and is for the conversion of "checks which were the property of the plaintiff in the total sum of $64,755.44." Supplementing these allegations with such information as may be gleaned from the checks, we again note that the plaintiff is the drawer, that there are apparent indorsements by the payee (not alleged to be forged), and indorsements by the defendant, which is not the drawee bank. No right of ownership in the plaintiff is apparent.

The demurrer was rightly sustained as to count 3.

4. Count 4 alleges that "on divers dates between January 1, 1960, and May 15, 1960, the defendant by reason of its negligence in cashing checks with forged indorsements thereon damaged the plaintiff in the full amount of said checks, to wit $64,755.44. Wherefore, the plaintiff prays judgment against the defendant in the sum of $64,755.44, with interest." From the checks, we observe that, wholly apart from any duty on the part of the defendant toward

---

[1] "Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim."

the plaintiff (compare *Mechanics Natl. Bank* v. *Worcester County Trust Co.* 341 Mass. 465, 473–474), there is no allegation of legal damage. When the defendant "cashed" checks with its own funds, no legal harm befell the plaintiff. From what we have said in respect of counts 1 and 3, there would be difficulty in making such an allegation. The harm which befell the plaintiff was the charging of its account by the drawee bank. As has been noted above, the drawer has a cause of action, possibly subject to defences, against that bank. It does not appear that this right is impaired.

There was no error in sustaining the demurrer to count 4.

*Order sustaining demurrer affirmed.*