**FEDERAL INSURANCE COMPANY, Plaintiff, Appellant,**

v.

**The FIRST NATIONAL BANK OF BOSTON, Defendant, Appellee.**

**No. 80–1293.**

United States Court of Appeals, First Circuit.

Argued Sept. 8, 1980.

Decided Nov. 18, 1980.

sermann, Davison & Shattuck, Boston, Mass., were on brief, for plaintiff, appellant.

Daniel L. Goldberg, Boston, Mass., with whom Amy B. Cohen, and Bingham, Dana & Gould, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, WYZANSKI, Senior District Judge,* and KEETON, District Judge.*

WYZANSKI, Senior District Judge.

In this diversity of citizenship action, brought pursuant to 28 U.S.C. § 1332, the critical question is whether the plaintiff has a Massachusetts common law cause of action for money had and received. There is no genuine dispute as to the following material facts.

The plaintiff, Federal Insurance Company (Federal Insurance), is a New York corporation; the defendant, The First National Bank of Boston (FNBB) is a national banking association organized under the laws of the United States, with its principal place of business in Massachusetts. Federal Insurance insured Keystone Custodian Funds, Inc. (Keystone) and its wholly owned subsidiary Investment Companies Services Corporation (ICSC), a Massachusetts corporation, against all losses sustained "by reason of any dishonest, fraudulent or criminal act of any agent." ICSC served as the transfer and service agent for the Scudder, Stevens and Clark Common Stock Fund (Scudder) of which Mrs. Helen F. Whitaker of 2401 Del Lago Drive, Fort Lauderdale, Florida (the Fort Lauderdale Mrs. Whitaker) owned 3,172.307 unissued shares. She had no evidence of ownership except semiannual statements from ICSC. At some time between May and October 4, 1968, an unknown person changed on ICSC's books Mrs. Whitaker's address to 3000 Main Street, Tallahassee, Florida. No documents authorizing the change have been found.

In October 1968 a redemption of Scudder Fund Shares normally involved these steps, *inter alia*: (1) the shareholder would send

Leonard F. Clarkin, Boston, Mass., with whom Barbara Bruce Williams, and Haus-

---

* From the District of Massachusetts, sitting by designation.

Scudder a written request for redemption; (2) Scudder would turn the request over to ICSC; (3) clerks of ICSC would verify the shareholder's address, determine the amount owing to the shareholder, prepare an ICSC check in the determined amount and make the check payable to the registered shareholder, unless the instructions called for a payment to other persons; and (4) officers of the bank would sign for ICSC as drawer. Except for the October 16, 1968 check, described *infra*, the papers which would normally be used to accomplish a redemption of the 3,172.307 shares are missing.

October 16, 1968 ICSC[1] drew a check in the amount of $40,288.30 upon the State Street Bank and Trust Company payable to "First National Bank a/c Helen Whitaker."

During the first or second week of October, Donald Brandt, an assistant cashier of FNBB, received a telephone call from a woman identifying herself as Mrs. Helen F. Whitaker of 2401 Del Lago Drive, Fort Lauderdale, Florida. She said that she would be coming to Boston to visit relatives and wanted to open an account while there; that she would come to FNBB in person to fill out forms and pick up her checks; and that her broker would be sending a check to FNBB, attention of Brandt. Brandt, immediately prepared papers necessary to open a checking account.

October 18 Brandt returned to his desk to find the October 16 ICSC check. It had been delivered by hand by an unknown person. Although FNBB had as yet no signature cards signed by any Helen F. Whitaker, Brandt, without making inquiries, on October 18 opened in the name of Helen F. Whitaker an account numbered 955–9958. Brandt endorsed the ICSC check in handwriting with the number 955–9958 and deposited it in the account he had just opened. Some employee of FNBB stamped the check with the symbol "Pay Any Bank

PEG [that is, previous endorsements guaranteed] the First National Bank of Boston." Thereafter, FNBB forwarded the check for collection from the drawee bank, State Street Bank and Trust Co., which honored the check.

Two or three days later, a woman in her early twenties, identifying herself as "Helen Whitaker's niece," appeared at Brandt's desk. She presented two partially filled—out signature cards bearing the name "Helen F. Whitaker." Brandt gave her the October 18 deposit slip and some temporary blank checks.

On October 23, a woman apparently in her twenties, presented one of the temporary checks, dated October 21, made out to cash, in the amount of $40,285.30, to Mrs. Ingrid Z. Schwaab, another assistant cashier of FNBB. Mrs. Schwaab placed an intra—office call to Brandt to be sure that the bank was giving the money to the right person. The only precaution that the bank took was to have the woman sign the checks twice and to compare the signatures with the signature card. Then Mrs. Schwaab handed over $40,285.30 to the woman.

When the Fort Lauderdale Mrs. Whitaker failed to get from ICSC her semiannual accounting with respect to her Scudder shares, she informed ICSC that she had not changed her address, nor authorized the redemption of the 3,172.307 unissued shares, nor received the proceeds of the redemption. ICSC replaced, at a cost of $38,283.00, the Fort Lauderdale Mrs. Whitaker's shares and filed a claim with its insurer, Federal Insurance. For $28,712.25 Federal Insurance settled ICSC's claim. ICSC assigned to Federal Insurance all its claims arising out of the Whitaker transaction.

■ Federal Insurance as subrogee brought in the district court against FNBB

---

1. The text of the check at the top left corner shows the following statement: "Investment Companies Services Corp. Agent for Scudder, Stevens & Clark Common Stock Liq. A/C." In the space for the signature of the drawer are the signatures of Morrison and Boynton—officers of ICSC. The parties agree that that statement and those signatures make ICSC the drawer of the check.

an action for money had and received.[2] The defendant moved for summary judgment. The district court granted the motion and entered summary judgment. The plaintiff appealed. We affirm for the following reasons.

The plaintiff, as the subrogee[3] of ICSC, alleged that under the common law of Massachusetts[4] (1) presumably as drawer of the October 16, 1968 check, ICSC had against FNBB a cause of action for money had and received, and (2) presumably as agent or trustee of the Fort Lauderdale Mrs. Whitaker, ICSC had a cause of action against FNBB for funds which it had received and held as trustee for the Fort Lauderdale Mrs. Whitaker. The plaintiff's contention is that FNBB had a duty to both ICSC and Mrs. Whitaker to apply the check for the account of the Fort Lauderdale Mrs. Whitaker, but that, in breach of that duty, FNBB, acting in a commercially unreasonable way, deposited the check to an account from which FNBB negligently allowed an imposter to withdraw all except $3 of the amount FNBB collected on the check.

The short answer is that upon the undisputed facts the plaintiff has not borne the burden of showing that the drawer ICSC, or anyone else, ever instructed FNBB to pay the $40,288.30 amount of the check to the account of the Fort Lauderdale Mrs. Whitaker. Certainly, as her deposition makes clear, she never has had any relationship to FNBB or to the October 16, 1968 check. There is not any evidence which shows, or would support an inference, that the ICSC clerk who typed "First National Bank a/c Helen Whitaker" in the blank space for payee (or anyone else at ICSC) instructed FNBB to use the check for the account of the Fort Lauderdale Mrs. Whitaker. On the contrary, the only reasonable inference from the face of the check as well as from the surrounding circumstances is that the clerk intended that the payee bank[5] should pay the amount to the account of an imposter who calling herself Helen Whitaker would become a customer of the bank. So irresistible is this inference that it would have been plain error had the trial court found—which it did not—[6] that ICSC intend-

2. The complaint in its concluding prayer states:
   "1. That Defendant Bank owes Plaintiff $38,283.00 for money had and received from Investment Companies Services Corporation which should have been paid by Defendant to Helen F. Whitaker of Fort Lauderdale, Florida.
   "2. That Defendant owes Plaintiff $38,283.00 based upon Defendant's receipt of legal title to the funds of Scudder, Stevens & Clark Common Stock Fund in October, 1968 which Defendant received from Investment Companies Services Corporation and held as trustee for the benefit of Helen F. Whitaker of Fort Lauderdale, Florida."
   Neither the plaintiff's complaint nor its brief suggests that it has a cause of action under any provision of the Uniform Commercial Code incorporated in Mass.Gen.Laws c. 106, or that it has a timely cause of action in tort.

3. Inasmuch as plaintiff sues as subrogee of ICSC, the plaintiff has only the rights which ICSC would have if it were suing FNBB and is subject to any defenses which FNBB could assert against Federal Insurance. *Provident Cooperative Bank v. James Talcott, Inc.*, 358 Mass. 180, 188, 260 N.E.2d 903 (1970).

4. This being a diversity action under 28 U.S.C. § 1332, it is governed by the law of the Commonwealth of Massachusetts, *Erie Railroad Co.*

*v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. We are not unmindful that the October 16, 1968 check is payable to "The First National Bank a/c Helen Whitaker," and that it is quite possible that when the clerk typed the check his intention was that the check should be presented to The First National Bank of whichever city seemed best to the imposter. However, the uncertainty as to the particular bank to be used does not affect the reasoning set forth in the text of our opinion.

6. The district court's opinion recites that "It was on October 16, 1968 that ICSC issued the check in the amount of $40,288.30 made payable to the Helen Whitaker account at the First National Bank." (A. 214). But, as a matter of law, the check was payable to the "First National Bank" as payee despite the check's statement of the person for whose benefit the bank was to use the check, Mass.Gen.Laws c. 106 § 3–117. See *Pan American Bank of Miami v. Goldszmidt*, 364 So.2d 505 (Fla.D.Ct.App.1978), cert. den. sub nom. *Goldszmidt v. Pan American Bank of Miami*, 373 So.2d 458 (Fla.1979); *Swiss Baco Skyline Logging, Inc. v. Haliewicz*, 18 Wash.App. 21, 30–32, 567 P.2d 1141, 1148 (1977); *West Penn Administration, Inc. v. Union National Bank of Pittsburgh*, 233 Pa.Super.

ed the check to be for the benefit of the Fort Lauderdale Mrs. Whitaker. Since the check was not payable for the account of the Fort Lauderdale Mrs. Whitaker, the plaintiff failed to lay a factual foundation for either of the prayers in its complaint or for the contentions in its brief. For that reason the district court's judgment must be affirmed. The judgment could also be affirmed on the ground that the defendant FNBB carried out the drawer's directions. See note 6, *supra*.

Inasmuch as the foregoing factual points were only incidentally raised in the briefs, we shall add alternate grounds of decision, fully canvassed at our bar.

The judgment is also affirmed upon the basis of the policy underlying U.C.C. § 3–405, Mass.Gen.Laws c. 106 § 3–405 which provides:

"Imposters; Signature in Name of Payee. (1) An indorsement by any person in the name of a named payee is effective if

(a) an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest. . . ."

The purpose of that section is stated as follows in the Official Comment to § 3–405:

"The principle followed is that the loss should fall on the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly

and expense of his business rather than of the business of the holder or drawee." Under U.C.C. § 3–405 it has been held that an employee of the drawer forges the endorsement of the payee the drawer cannot recover from either the drawee bank which has paid the check, *New Amsterdam Casualty Co. v. First Pennsylvania Bank & Trust Co.*, 451 F.2d 892 (3rd Cir. 1971), or a collecting bank *which has paid over the proceeds of the collected funds. Braswell Motor Freight Lines, Inc. v. Bank of Salt Lake*, 28 Utah 2d 347, 502 P.2d 560 (1972).

■ In view of U.C.C. § 1–102, Mass.Gen. Laws c. 106 § 1–102 which provides that the Code shall be "liberally construed and applied to promote its underlying purposes and policies" and the Official Comment which states "This Act is drawn to provide flexibility so that. . . It will provide its own machinery for expansion of commercial practices. It is intended to make it possible for the law embodied in the Act to be developed by the courts in the light of unforeseen and new circumstances and practices[.]", we believe that the Massachusetts court would apply to the case at bar the policy of § 3–405, set forth in the Official Comment to that section, quoted *supra*, to preclude ICSC as drawer from recovering from FNBB as collection bank whatever it paid over upon the basis of a fraudulent designation of both the payee and the beneficiary of that payee by a dishonest employee of the drawer. That payment over is *ejusdem generis* as a payment over in the three specific instances set forth in U.C.C. § 3–405(1), Mass.Gen.Laws c. 106 § 3–405(1), already quoted. It involves the same public policies with respect to allocation of losses, and should have the same consequences in allocating to the drawer rather than the collecting bank whatever was lost by a payment over. See Restatement, Restitution § 142(1).

Our conclusion is fortified by the result, if not by the reasoning, in *Stone & Webster*

311, 335 A.2d 725 (1975). Hence a more accurate finding would have been that the check was payable to the First National Bank, which was to use the check or its proceeds for the

account of "Helen Whitaker"; the "Helen Whitaker" intended by the drawer was such imposter as should get in contact with the bank and open an account.

*Engineering Corp. v. First National Bank*, 345 Mass. 1, 184 N.E.2d 358 (1962) where a drawer was denied recovery against a collecting bank which had paid over on a forged endorsement of the payee's name. That case it seems to us could have been more satisfactorily decided upon the basis of the policy underlying § 3–405 and the payment over by the collecting bank than upon the rationale given by the Supreme Judicial Court.[7]

The plaintiff's attempt to distinguish the instant case from the factual situation in *Stone & Webster* is without merit. The plaintiff contends that ICSC was not only the drawer of the October 16, 1968 check but also was the agent of the Fort Lauderdale Mrs. Whitaker and in the latter capacity is entitled to the proceeds of this check. The fundamental flaw in that argument is that, as we have already stated, there is no basis for the suggestion that the Fort Lauderdale Mrs. Whitaker had any interest in the check or its proceeds.

■ Quite apart from any reliance on the policy underlying U.C.C. § 3–405, the payment over in the case at bar constitutes a valid defense in this action because it was in accord with the specific direction of the drawer. *Adams v. First National Bank of Adams*, 321 Mass. 693, 694, 75 N.E.2d 502 (1947).

Finally, there is no merit to the second prayer of the complaint stating a claim to funds [8] of Scudder, which FNBB received

---

7. *Stone & Webster Engineering Corp. v. First National Bank*, 345 Mass. 1, 184 N.E.2d 358 (1962) held that a drawer of a check cannot maintain against a collecting bank an action for money had and received. There the drawer of checks sought to recover from a collecting bank the amount which it had collected from the drawee bank and paid over to an imposter on the basis of fraudulent endorsements, purporting to be the payee's signature, by a dishonest employee of the drawer, the checks never having been delivered to the payee. The Supreme Judicial Court denied recovery on the ground that since the drawer as a depositor in the drawee bank "was merely in a contractual relationship of creditor and debtor," the "amount the defendant [the collecting bank] received from First National Bank [the drawee bank] ... were the bank's [the drawee's] funds and not the plaintiff's [the drawer's]. Ibid., p. 5, 184 N.E.2d 358. The court (without referring to subrogation), rejected as a *non sequitur* the drawer's contention that as a consequence of the drawee bank having charged the account of the drawer, the drawer "was deprived of a credit" and the collecting bank received "funds or a credit which 'in equity and good conscience' belonged to the" drawer. *Ibid.*

We are not persuaded by the reasoning of the *Stone & Webster* case, even though, because of the underlying policy of U.C.C. § 3–405 *and the payment over by the collecting bank*, we have no doubt of the soundness of the result. Our doubts with respect to the reasoning are founded on the following situation. When a collecting bank still retains control of any part of the proceeds of a collected check which has been endorsed by, or made payable for the benefit of, an imposter, (which may be the situation with respect to $3 *in the case at bar*), the collecting bank is not entitled to keep that part, nor is the imposter entitled to it. Yet the drawee bank would have no incentive to bring an action against the collecting bank, inasmuch as the drawee would already have charged the drawer's account and the drawer could not compel the drawee to recredit that account. U.C.C. § 3–405; Mass.Gen.Laws c. 106 § 3–405. *New Amsterdam Casualty Co. v. First Pennsylvania Bank & Trust Co.*, 451 F.2d 892 (3rd Cir. 1971). It seems to us that the Massachusetts court would hold that under those circumstances the drawer was subrogated to the drawee's right to maintain against the collecting bank an action for "money which should not in justice be retained by the defendant (the collecting bank) and which in good conscience should be paid to the plaintiff (drawer)." *Stone & Webster Engineering Corp. v. First National Bank*, supra, p. 4, 184 N.E.2d 358. It would apply the following principle of Restatement, Restitution § 1: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other."

In the instant case there is no occasion to consider whether this principle or the policy of U.C.C. § 3–405(1)(a), Mass.Gen.Laws c. 106 § 3–405(1)(a), applies to the $3 which the collecting bank (as part of the $40,288.30) received and used to establish a credit for the imposter but which the bank has not paid over to anyone. At our bar the plaintiff's counsel expressly waived any right to recover the $3 apart from the whole $40,288.30.

8. Neither the complaint nor the plaintiff's brief presents a claim that FNBB received as payee a *check* for the benefit of the Fort Lauderdale Mrs. Whitaker. Such a claim would be without factual support. There was no intention on the part of anyone to make the Fort Lauderdale Mrs. Whitaker a beneficiary of the October 16, 1968 check. So there was no express trust. Nor was there a constructive trust. The Fort

from ICSC and held for the benefit of the Fort Lauderdale Mrs. Whitaker. The only relevant funds FNBB ever received were the proceeds of the October 16, 1968 check· which it collected from the drawee bank. Those were funds not of Scudder or of ICSC but of the drawee bank. *Stone & Webster Engineering Corp. v. First National Bank, supra.* Moreover, those funds were not held for the benefit of the Fort Lauderdale Mrs. Whitaker. See footnote 8, *supra.*

*Affirmed.*

Lauderdale Mrs. Whitaker never elected to abandon her claim for the 3,172.307 shares and to follow the proceeds of those converted shares; instead she chose to receive a replacement of the 3,172.307 shares (which, incidentally, were worth only $38,283, or some $2,000 less than the proceeds of the October 16, 1968 check).