RIZZO MOTORS, INC. and General
Motors Acceptance Corp.,
Appellants,

v.

CENTRAL BANK OF KANSAS
CITY, Respondent.

No. WD 44508.

Missouri Court of Appeals,
Western District.

Feb. 25, 1992.

William F. Ford, Jr. and Tonya Olsen
Johnston, Gage and Tucker, Kansas City,
for appellants.

Elaine D. Koch, Spencer, Fane, Britt &
Browne, Kansas City, for respondent.

Before KENNEDY, P.J., and FENNER
and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

General Motors Acceptance Corporation
(GMAC) appeals from the trial court's
grant of summary judgment in favor of
Central Bank of Kansas City. GMAC con-
tends that the trial court erred in granting
summary judgment to Central Bank be-
cause: (1) GMAC is entitled to warranties
as an "other payor" under the U.C.C. and
§ 400.4–207, RSMo 1986 [1]; and (2) genuine
issues of material fact remain as to wheth-
er Central Bank converted the checks in

---

1. All statutory references are to Revised Mis-souri Statutes 1986, unless otherwise indicated.

issue and whether GMAC ratified the conversion. The judgment is affirmed.

On August 1, 1989, the president of Central Bank, Millard Johnson, telephoned John Rizzo, the manager of Rizzo Motors, Inc., d/b/a Rizzo Chevrolet and an officer of J.R. Motors, Inc., to advise him of an overdraft in the J.R. Motors account. Mr. Rizzo informed Mr. Johnson that Ray Agee, an officer of Rizzo Motors, would be down that day to make a deposit in the account. On that day, Ray Agee went to Central Bank and presented $623.92 in cash and eleven checks totalling $56,317.10, for deposit into the account of J.R. Motors. Among these checks were two checks, No. 1907 and No. 1908, issued by GMAC and drawn on Commerce Bank of Kansas City on August 1, 1989. These checks were made payable to Rizzo Chevrolet in the amounts of $25,222.00 and $23,063.79.

The checks were deposited into the account of J.R. Motors without having been endorsed either by Rizzo Chevrolet or by J.R. Motors. Instead, they were stamped by Central Bank as "credited to the account of the within named payee absence of endorsements guaranteed. Central Bank of Kansas City, Phillip Harris, Sr., VP." Rizzo Chevrolet did not have an account at Central Bank.

Phillip Harris delivered the two checks to Commerce Bank for payment. In exchange for the two checks, Commerce Bank issued two cashier's checks payable to Central Bank. When Mr. Harris returned to Central Bank he told Mr. Johnson that although Mr. Agee told him to deposit all of the checks, including the two GMAC checks, into the J.R. Motors' account, Mr. Agee had not endorsed the checks. Mr. Johnson telephoned Mr. Agee and asked him to return to the bank. Mr. Agee complied with this request, returned to Central Bank and subsequently signed the Commerce Bank cashier's checks and endorsed the remaining nine checks. The endorsement on the back of the cashier's checks read, "This check is a conversion of a GMAC check of a like amount payable to Rizzo Chevrolet, Inc. paid to the order of J.R. Motors by [signed] Ray Agee."

On September 12, 1989, Rizzo Motors assigned any claims it had against Central Bank to GMAC. On September 27, 1989, Rizzo Motors demanded the return of the two GMAC checks. Central Bank refused to return the checks. GMAC filed suit against Central Bank for breach of warranties under § 400.4–207 and for conversion. On August 17, 1990, Central Bank filed a motion for summary judgment. This motion was sustained by the trial court. It found that: (1) GMAC does not qualify as an "other payor" under § 400.4–207; and (2) although Central Bank's act of acceptance of the unendorsed checks was "not in accordance with the reasonable standards of commercial banking practice," Central Bank's actions had been ratified by Rizzo. GMAC appeals from the grant of summary judgment.

Rule 74.04, which governs summary judgments, states that the judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c). The record is scrutinized in the light most favorable to the party against whom the motion for summary judgment was filed. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987).

In its first point, GMAC argues that the trial court erred in granting summary judgment to Central Bank because GMAC is an "other payor" under the U.C.C. and under § 400.4–207.

Section 400.4–207 provides for certain warranties running from a collecting bank "to the payor bank or other payor who in good faith pays or accepts the item...." These warranties are that the collecting bank has good title to the item, that it has no knowledge that the signature is unauthorized and that the item has not been materially altered. The payor bank in the instant case was Commerce Bank. GMAC, the drawer of the checks, does not claim to be a payor bank. It does claim as drawer it qualifies as an "other payor" to whom warranties are owed under § 400.4–207.

The terms "payor" and "other payor" are not defined anywhere in the Code.

The only Missouri case to consider the definition of "other payor" is *Aetna Casualty & Sur. Co. v. Traders Nat'l Bank & Trust Co.*, 514 S.W.2d 860 (Mo.App.1974). The court in *Aetna* found that Aetna, the drawer of a settlement draft on which the endorsements of one of the payees was forged, was an "other payor" as the term is used in § 400.4–207. *Id.* at 862–64. *Aetna* is inapplicable, however, as it is factually distinguishable from the transaction in the instant case. The instrument under scrutiny in *Aetna* was a "payable through" draft where Aetna was the only possible payor given the terms of the instrument. *Id.* at 864. The bank in *Aetna* was a "collecting bank" through which the funds were paid. *Id.* The GMAC checks in the instant case were not payable through drafts but were commercial checks drawn by GMAC on Commerce Bank and made payable to Rizzo Chevrolet.

As there is no applicable Missouri law governing the disposition of the issues raised in the instant case, both the appellant, GMAC, and the respondent, Central Bank, direct attention to cases from other jurisdictions. GMAC places reliance on that line of cases which permit the drawer as a payor to directly sue the collecting bank for breach of warranties. In particular, GMAC relies upon *Sun 'n Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 582 P.2d 920, 148 Cal.Rptr. 329 (1978).

In *Sun 'n Sand*, an employee whose duty it was to prepare checks for the signature of a corporate officer made out nine such checks payable to United California Bank (UCB) over a three year period for small sums of money. *Sun 'n Sand*, 582 P.2d at 926, 148 Cal.Rptr. at 335. Once she had obtained the authorized signatures, the employee altered the amounts on the checks, increasing them to several thousand dollars. *Id.* She then presented the checks to UCB, the named payee, who permitted the proceeds to be deposited to the employee's personal account. *Id.* Sun 'n Sand sued UCB, relying on certain warranties imposed in sections 3417 and 4207 of the California Uniform Commercial Code. *Id.*

The California court allowed Sun 'n Sand, the drawer of the checks, to rely on the warranty provisions of the Code holding "that the drawer of a check whose account is charged is a payor within the meaning of section 4207 and may maintain an action against a collecting bank based on that section's warranties." *Id.* at 928, 148 Cal. Rptr. at 337. The court in *Sun 'n Sand* used a broad construction of the term "payor" and grounded its holding on the objective of avoiding multiple suits and circuity of action. *Id.* at 927, 148 Cal.Rptr. at 336. Several other jurisdictions also allow the drawer to directly sue the collecting bank. *See Horne v. C & S Bank*, 167 Ga.App. 187, 305 S.E.2d 897 (1983); *Insurance Co. of North America v. Purdue Nat'l Bank*, 401 N.E.2d 708 (Ind.App.1980).

Not surprisingly, Central Bank directs attention to the jurisdictions which do not allow the ordinary drawer of a check a cause of action for breach of warranty. The leading case in this area is *Stone & Webster Eng'g Corp. v. First Nat'l Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358 (1962). The court in *Stone & Webster* found some theoretical merit in allowing the drawer direct action against a collecting bank as such avoids circuity of action. *Stone & Webster*, 184 N.E.2d at 362. However, the court went on to analyze the issue in light of the defenses set up in the Code. After examining these defenses, the court concluded:

> If the drawer's rights are limited to requiring the drawee to recredit his account, the drawee will have the defences [sic] noted above and perhaps others; and the collecting bank or banks will have the defences [sic] in § 4–207(4) and § 4–406(5), and perhaps others. If the drawer is allowed in the present case to sue the collecting bank, the assertion of the defences [sic], for all practical purposes, would be difficult. The possibilities of such a result would tend to compel resort to litigation in every case in-

volving a forgery of commercial paper. It is a result to be avoided.

*Id.* at 363 (footnote omitted).

Similarly in *Life Ins. Co. of Virginia v. Snyder,* 141 N.J.Super. 539, 358 A.2d 859 (1976), the court rejected the idea of direct action by a drawer and addressed the circuity of action argument. It stated:

> Permitting an action by a drawer against a collecting bank on the theory that circuity of action is avoided assumes too much. The theory is bottomed on the premise that the drawer will recover against his bank; that no defenses are available to the bank, and that no defenses are available to the payor bank's transferor. The premise is unsound. The orderly system of commercial practice envisioned by the Code is promoted by a plain reading of N.J.S.A. 12A:4–207. And read plainly, it extends no warranties to the drawer of a check.

*Life Ins. Co. of Virginia,* 358 A.2d at 862. *See also, First Fidelity Bank, N.A. v. First Interstate Bank, N.A.,* 716 F.Supp. 1359 (D.Or.1989); *Central Cadillac, Inc. v. Stern Haskell, Inc.,* 356 F.Supp. 1280 (S.D.N.Y.1972); *Jett v. Lewis State Bank,* 277 So.2d 37 (Fla.App.1973).

White & Summers, in discussing the issue, conclude that not allowing a direct action by the drawer conforms more closely to the U.C.C. They state:

> For the reasons given in Stone & Webster considered earlier, it seems most unlikely that the Code draftsmen intended the drawer to be regarded as "another payor." Apparently the draftsmen intended that the drawer have a suit against his drawee bank for improper payment and that the drawee should bear the burden of raising and arguing any defense, such as negligence, which would preclude the drawer from asserting forgery or the like. To hold that the warranties in 4–207 flow either directly or under a third-party beneficiary theory to the drawer, is to shift the burden of presenting these defenses to the deposi-

tary or other collecting banks who would be likely defendants in such suit. As indicated before, it seems likely that the drawee is in the best position to prove negligence on the drawer's part, that the drawee should therefore be made to do so, and that the drawer has no real complaint if he is limited to a suit against his drawee inasmuch as his own bank is likely to be a convenient defendant located in his own home town. For these reasons we think it unfortunate that some courts have extended the 4–207(1) warranty to the drawer. Some courts have explicitly refused to do so under 4–207.

J. White & R. Summers, *Uniform Commercial Code* § 15–9 (3d ed.1988).

■ This appears to be the better reasoned view and is hereby adopted by this court. Thus, GMAC as the drawer of the checks in question is not an "other payor" under § 400.4–207 and not entitled to the warranties contained therein.[2] Point I is denied.

■ In Point II, GMAC contends that the trial court erred in granting summary judgment to Central Bank because genuine issues of material fact remain as to whether Central Bank converted the checks in question and whether the conversion was ratified. GMAC contends that Central Bank's acceptance of the unendorsed checks constituted a conversion and that factual and legal issues remain as to whether a ratification occurs. GMAC sues as an assignee of Rizzo Motors and is subject to the same defenses which could be asserted against Rizzo Motors. *Weeks–Maxwell Constr. Co. v. Belger Cartage Serv., Inc.,* 409 S.W.2d 792, 797 (Mo.App. 1966). Ratification is a defense to a claim of conversion. *See* § 400.3–404; *Maples v. United Sav. & Loan Ass'n,* 686 S.W.2d 525 (Mo.App.1985).

■ The undisputed facts in this case show that a ratification occurred. Mr. Agee ratified Central Bank's acceptance of the unendorsed GMAC checks in writing by

---

**2.** In correspondence to this court after oral argument, the parties debate the merits of new conforming amendments to Article 4 of the UCC and their applicability in this case. Missouri has not adopted these amendments and they are not considered in this opinion.

the terms of his endorsement on the cashier's checks. GMAC argues that Central Bank has failed to prove that Mr. Agee had actual or apparent authority to make such a ratification.

Mr. Agee was an officer of Rizzo Motors. At Central Bank, he regularly endorsed checks made payable to Rizzo Chevrolet for deposit in the J.R. Motors account without any dispute or question from Rizzo Chevrolet or anyone else. He endorsed the other nine checks making up the deposit on August 1, 1989, without subsequent objection.

Mr. Johnson called John Rizzo about the overdraft. John Rizzo told Mr. Johnson that Mr. Agee would be down that day to make the deposit and, in fact, Mr. Agee did make the deposit. These undisputed facts show that Mr. Agee was an agent of Rizzo Chevrolet and, as such, had the power to ratify Central Bank's acceptance. As an officer of Rizzo Chevrolet, Mr. Agee's authority to bind the corporation may be actual or apparent. *Parks v. Midland Ford Tractor Co.*, 416 S.W.2d 22 (Mo.App.1967). In a true agency, whether actual or apparent, the principal appoints the agent, either expressly or by implication, by conduct for which the principal is responsible. *Springfield Television, Inc. v. Gary*, 628 S.W.2d 398, 402–03 (Mo.App. 1982). This appointment "may be by notice or reasonable basis of suspicion of the agent's acts with knowing acquiescence by the alleged principal." *Id.* at 403.

GMAC cites *Newman v. Schiff*, 778 F.2d 460, 467 (8th Cir.1985), for the proposition that ratification cannot "give legal significance to an act which was a nullity from the start." The example given in *Newman* is of an agent entering into a contract, subsequently ratified but lacking in consideration. *Id.* This is a different situation than where, as in the instant case, no legal nullity would have existed should the transaction have been properly made. *Newman* also states, "Ratification relates back and is the equivalent of authority at the commencement of the act." *Id.* This equivalent authority is what is shown by the undisputed facts in the instant case. No genuine issue of material fact remains. Point II is denied.

The judgment is affirmed.

All concur.