457 So.2d 273 (1984)
TOP CROP SEED & SUPPLY COMPANY, INC., Plaintiff-Appellant,
v.
BANK OF SOUTHWEST LOUISIANA, Defendant-Appellee.
No. 83-903.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
*275 Miller, Miller & Craton, John F. Craton, Crowley, for plaintiff-appellant.
John P. Navarre, Oakdale, for defendant-appellee.
Before GUIDRY, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
This is a suit to recover the proceeds of three checks cashed on forged endorsements. Plaintiff-appellant Top Crop Seed & Supply Company, Inc. (Top Crop) is the payee and true owner of the checks. Defendant-appellee Bank of Southwest Louisiana (the bank) cashed the checks for Ross V. Williams (Williams), who forged the endorsements on the checks. The lower court maintained the bank's exceptions of no cause of action and prescription. Top Crop appeals. We reverse the judgment of the trial court.

FACTS AND PRIOR PROCEEDINGS
In May of 1975, Williams, a vice-president, stock-holder, and full-time employee of Top Crop, endorsed three checks payable to the order of the corporation with the corporation's signature and cashed the checks at the Bank of Southwest Louisiana.[1] The bank was not the drawee (or payor) of any of these checks. It may accurately be described as the cashing, depository, and collecting bank. The sum of the three checks was $6,418. Top Crop did not have an account with the bank nor had it done business with the bank.
Top Crop filed suit against the bank on May 1, 1978. The trial judge dismissed the case on an exception of prescription, finding that the suit was based on tort law and that more than one year had passed between the date of the forgeries and the date of filing suit.
On appeal, this court found that Top Crop's petition did not state a cause of action because it was not alleged that Williams had forged the corporate signature. We did not rule on the issue of prescription. We reversed and set aside the trial judgment, and granted Top Crop leave to amend its petition to state a cause of action. Top Crop Seed & Supply v. Bank of S.W. La., 392 So.2d 738 (La.App. 3d Cir. 1980).
Top Crop amended its petition to state that the bank had cashed checks on which Williams had forged the corporate signature. The bank filed a second exception of prescription and an exception of no cause of action. The trial judge deferred ruling on the exceptions, and trial was had on the merits. After trial, the court entered judgment for the bank on both peremptory exceptions, ruling that the claim was in tort and had thus prescribed and that Louisiana law afforded Top Crop no action against the bank, rather, it must sue the drawer. The lower court further found that Williams had been released from liability by Top Crop, and that such a release also absolved the bank of any possible liability. The lower court also found that if the bank was liable to Top Crop, then Williams, third-party defendant, was liable to the bank for any judgment in favor of Top Crop.
Top Crop perfected this devolutive appeal to this court.

ISSUES
Top Crop assigns as error the trial court's finding that it had no cause of action against the bank. Top Crop contends that LSA-R.S. 10:3-419(1) gives it a cause of action against the bank. Top Crop also assigns as error the trial court's finding that its cause of action against the bank, if any, was in tort, and had thus prescribed. Top Crop contends that the five year prescriptive period applicable to *276 bills and notes applies to its suit against the bank.

TOP CROP'S CAUSE OF ACTION
The lower court maintained the bank's peremptory exception of no cause of action[2] on the authority of Smith v. Louisiana Bank & Trust Company, 255 So.2d 816 (La.App. 2d Cir.1971), rev'd on other grounds, 272 So.2d 678 (La.1973). The Smith case followed a long line of Louisiana jurisprudence under the Uniform Negotiable Instruments Law (NIL) which holds that the payee of a check has no cause of action against the collecting bank; rather, his action is properly against the drawer. Id. at 819 (citing Fidelity National Bank of Baton Rouge v. Vuci, 224 La. 124, 68 So.2d 781 (1953); M. Feitel House Wrecking Co. v. Citizens Bank and Trust Co., 159 La. 752, 106 So. 292 (1925); Fernon v. Capital Bank and Trust Company, 190 So.2d 504 (La.App. 1st Cir.1966)). Although the Louisiana Supreme Court affirmed this aspect of the Smith decision, it was noted that this rule is contrary to the decisions of the overwhelming majority of jurisdictions governed by the Uniform Commercial Code (UCC), which allow the payee to sue the collecting bank. 272 So.2d at 684 (Tate, J., concurring). It was also noted that even though Louisiana was the only state still retaining the NIL at that time, the majority of other jurisdictions also had allowed a direct action by a defrauded payee against a collecting bank when they had been governed by the NIL. Id. at 685-86 (Barham, J., dissenting).
The UCC law of commercial paper became effective in Louisiana on January 1, 1975. The pertinent commercial code section provides, in part:
"(1) When a drawee to whom an instrument is delivered for acceptance refuses to return it on demand; or when a person to whom an instrument is delivered for payment refuses on demand either to pay or to return it; or when a person pays an instrument on a forged indorsement, he is liable to the true owner.

(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument."
LSA-R.S. 10:3-419(1) & (2) (emphasis added). Comment 3 to this section states that the subsection which affords the true owner an action against one paying on a forged endorsement is new, and that it intends to adopt the prevailing view.
No Louisiana case has expressly held that the adoption of UCC commercial paper law, and particularly section 3-419, changes the Smith rule that a defrauded payee (or true owner under proper endorsement) may not sue a collecting bank. One recent case, however, lends substantial support to the view that this aspect of Louisiana law has been changed by the adoption of the UCC commercial paper provisions.
In Pargas, Inc. v. Estate of Taylor, 416 So.2d 1358 (La.App. 3d Cir.1982), this court found a drawee bank liable to a corporation under section 3-419(1) for cashing a corporate check with the necessary corporate endorsement forged by an employee. Had the precise issue presented here been raised in Pargas, Pargas would control this case, in light of the great similarity between the cases.[3] As explained by this *277 court, in reference to decisions under the UCC:
"We find no case on point reaching a contrary result. This is rightly so inasmuch as the Uniform Commercial Code was, of course, designed to `promote uniformity of the law among the various jurisdictions.' LSA-R.S. 10:1-102(2)(c). Provisions of the code should be construed so that rights and liabilities of the parties, absent serious factual dispute, are ascertainable without resort to expensive and delaying litigation over each item which might be paid on an unauthorized signature or endorsement, thereby facilitating commercial transactions."
416 So.2d at 1364-65. See also Jones v. American Bank & Trust Co., 387 So.2d 1360, 1363 (La.App. 1st Cir.1980) (rejecting suit by payee against cashing bank of forger only because plaintiff received "benefit of the funds" under LSA-R.S. 10:3-404).
The purpose behind LSA-R.S. 10:3-419(1) and, indeed, most of the provisions of modern commercial paper law is clear: that purpose is to do away with the old law, exemplified by Smith, under which the basis for recovery against another party in a commercial paper transaction is a contractual relationship. Under the old law, the mandated procedure was rigorous and circuitous:
"The payee may recover against the drawer because he has never been paid; the drawer may recover against the drawee because the drawee did not pay in accordance with the drawer's order; the drawee may recover against the collecting bank on its endorsement; the collecting bank may recover against the cashing bank on its endorsement; the cashing bank may recover against the forger under any number of theories."
Smith, 255 So.2d at 819. The new law under section 3-419(1) allows the payee (or other true owner) of an instrument to avoid uncertain and multiple litigation and proceed against the party in the chain that he feels is most likely to satisfy his claim. This facilitates commerce by increasing the trust that one may place in commercial paper, and certainly removes a burden from the courts by simplifying litigation.
Section 3-419(1) charges defendant bank with responsibility in the present situation. We hold that Top Crop has stated a cause of action against the bank under that section; Top Crop need not pursue its remedy against any other parties in order to maintain this action.[4]
Before he discovered the three forgeries by Williams, D.A. de la Houssaye (de la Houssaye), the other shareholder of *278 Top Crop, entered into an agreement with Williams whereby de la Houssaye purchased all of Williams' stock in Top Crop and thus became the sole shareholder. This agreement also terminated Williams' employment relationship with the corporation. Part of the agreement purported to release Williams from liability to Top Crop. The lower court reasoned that this stock sale, in effect, paid Top Crop for the loss it sustained when Williams cashed the checks, and thus should release the bank from liability also. We disagree, and we need not examine the particulars of the agreement and the included release to do so.
First, Top Crop is not suing Williams, it is suing the bank under the express authority of LSA-R.S. 10:3-419(1). As noted above, the cause of action afforded by section 3-419(1) does not depend upon the possibility or practicality of suit against other parties, it simply provides the payee (or other true owner) of an instrument with the right to sue a person who pays that instrument under a forged endorsement. To hinge the availability of section 3-419(1) on plaintiff's further contractual agreements with other parties would ignore the plain intent of that provision, and revert this area of law to the pre-UCC days of circuitous and confusing litigation.
As found by the lower court, the release, even if effective as between Williams and Top Crop, does not prevent the bank from recovering over against Williams as third-party defendant. It would, indeed, be an anomalous result to find the bank liable to Top Crop under the commercial paper law of this state, and also find that the bank may not recover over against the forger because the person by whom the bank is sued has arguably released the forger from liability. Such a holding would open the door to collusive actions by forgers and payees against banks.
Furthermore, in regard to the forged checks, the release was not effective even as between Top Crop and Williams. De la Houssaye testified at trial that he was unaware of the forgeries at the time of the agreement. His testimony establishes that the release was intended to encompass several corporate obligations then outstanding and known to both parties. This uncontradicted testimony comports with the terms of the agreement. Moreover, Williams' then unknown forgeries were illegal, and to the extent that the agreement could be construed to operate as a release from liability for such activities, it is void. La.Civ.Code art. 1892. See also La.Civ.Code art. 1847. See generally Branch v. Alexander, 231 La. 487, 91 So.2d 767 (1957); Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App. 3d Cir.1983) (releases are construed in the same manner as any other contract).
If de la Houssaye had been aware of the forgeries when he and Williams entered into the stock sale agreement, and if the agreement had provided that the appropriated proceeds of the forged checks were repaid in the stock sale, then the bank (and Williams) could raise as a defense to Top Crop's well-founded action that Top Crop had received the "benefit of the funds" of the three checks. See LSA-R.S. 10:3-404. Such, however, is not the case; it is clear that Top Crop did not receive the benefit of the funds in the sale, though, as noted in the conclusion of this opinion, it had received certain proceeds from one of the forged checks at an earlier date.
To summarize, we do not believe the release is effective in regard to the forged checks even between Top Crop and Williams; however, even if the release could prevent Top Crop from suing Williams on the forged checks, it does not prohibit Top Crop's action against the bank, nor does it prevent the bank from recovering over against Williams as third party defendant. A release such as the one between Williams and Top Crop is of minimal importance in this type of case; this is not simply an instance of contractual or delictual responsibility, this is a suit on commercial paper, governed by the law of commercial paper of this state.

*279 PRESCRIPTION
The forgeries and the cashing of the forged checks occurred in May of 1975, and suit was not filed until May 1, 1978. The trial judge concluded that Top Crop's cause of action against the bank, if any, was a tort action and had thus prescribed under the one-year limitation period of Civil Code Article 3536.[5] We do not believe that the one-year delictual prescriptive period applies to this suit.
Appellant Top Crop contends that the applicable prescriptive period is the five-year limitation of article 3540,[6] which provides:
"Actions on bills of exchange, notes payable to order or bearer, except bank notes, those on all effects negotiable or transferable by indorsement or delivery, and those on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable."
This provision has been held to be controlling in several cases in which the one-year tort provision arguably could have applied.
Strother v. National American Bank, 384 So.2d 592 (La.App. 4th Cir.1980) involved a bank which had cashed a check on a foreign bank contrary to a restrictive endorsement. The court stressed that, though the suit could roughly be characterized as an action of "civil conversion," the longer five-year period applied because the suit was on an instrument included within the scope of article 3540. Id. at 593-94. The court concluded: "With respect to the check in question we believe the clear intent of the article to be to the effect that bills of exchange, notes and other instruments, negotiable or otherwise, are to have a viable life for a period of five years." Id. at 594.
More recently, in Johnny Turcich, Jr., Inc. v. First National Bank of Jefferson Parish, 427 So.2d 602 (La.App. 5th Cir. 1983), the defendant, which was also the bank upon which the check had been drawn, cashed plaintiff's check contrary to plaintiff's stop order. Plaintiff filed suit more than five years later, and argued that, because he was a customer of the bank, the ten-year prescriptive period of article 3544[7] for personal actions applied to the suit.[8] The court noted that the stop-order was not in effect when the check was cashed, and that the general bank/customer relationship did not provide a suitable basis for the longer prescriptive period: "We feel, as do our brothers of Fourth Circuit Court, that it is the clear intent of LSA-C.C. art. 3540 that bills of exchange, notes and other instruments, negotiable or otherwise, are to have a viable life of five years. Accordingly, this action is governed by LSA-C.C. art. 3540." Id. at 604. See also Hersbergen, Banking Law, Developments in the Law, 1982-1983, 44 La.L.Rev. 247, 263-64 (1983).
We, too, believe that article 3540 evinces the intent of the legislature that all actions on bills and notes are to have a prescriptive period of five years.
The trial judge and counsel for appellee characterized this action as one in tort, i.e., "conversion," regardless of the statutory authority under which it is brought. We do not deny that this action is analogous to common-law conversion; however, we note that the commercial code provision of this state which gives the true owner of an instrument the right to sue a person who cashes that instrument under a forged endorsement was re-written from the UCC *280 source article explicitly "to delete reference to common law `conversion,' which is foreign to Louisiana." LSA-R.S. 10:3-419, Comment. Contra F. Stone, Tort Doctrine sec. 255 (La.Civ.L.Treatise vol. 12, 1977) (commenting that theories of negligence and conversion dominate the field of dispossession of movables in Louisiana and citing Coit v. Jennings, 8 Mart. (O.S.) 166 (1820) as origin of doctrine of civil conversion in Louisiana).
This action is not based on the tort articles, it is based on section 3-419 of the commercial paper laws.[9] No reference to article 2315 or any of the delictual articles is necessary to find a cause of action under section 3-419, nor is it necessary for the bank and the plaintiff to have any prior business or contractual relationship for section 3-419 and the corresponding five-year prescriptive period to apply.[10]
Top Crop's suit against the bank has not prescribed.

CONCLUSION
Although the trial court decided this case on the peremptory exceptions of the bank, a trial was had on the merits so that we might dispose of the case should the maintenance of the exceptions be erroneous. We find that Top Crop has carried its burden of proving that it is the true owner of the checks in question. It is the payee and the checks were not properly negotiated to any other person. We find, further, that the Bank of Southwest Louisiana cashed the checks in question under forged endorsements. Williams, the forger, did not have authority to cash checks for the corporation, as was determined at trial.
We find, with respect to the $6,418 sum of the checks, that Top Crop may recover only $4,618 from the bank. Testimony at trial establishes that $1,800 in cash representing the partial proceeds of one of the checks was conveyed by Williams through a warehouse employee of Top Crop to the corporation, and that this sum was subsequently deposited in an account to the credit of Top Crop.[11] Under the "benefit of the funds" rule of LSA-R.S. 10:3-404, Top Crop may not recover the $1,800 thus received.
We agree with the trial court that the bank should be able to recover over against third-party defendant Williams for any judgment against it. Although the trial opinion includes this finding, no judgment was entered in favor of the bank against Williams. Moreover, Williams is not a party to this appeal and the bank chose not to answer the appeal against it by Top Crop. Therefore, we may not grant any relief to the bank in this appeal. Our judgment today, however, does not preclude appropriate proceedings by the bank against Williams.

DECREE
Based on the above reasons, the judgment of the trial court is reversed and set aside. It is now ordered, adjudged, and decreed that there be judgment herein in *281 favor of plaintiff-appellant Top Crop Seed & Supply Company, Inc. against defendant-appellee Bank of Southwest Louisiana in the amount of $4,618, with legal interest from date of judicial demand. Costs of this appeal are to be borne by Bank of Southwest Louisiana.
REVERSED AND RENDERED.
GUIDRY, J., concurs in the result.
NOTES
[1] It was established in the lower court that Williams did not have authority to cash checks payable to the corporation.
[2] The bank had styled its exception as "no right of action." However, the trial court properly construed the exception as averring no cause of action. La.Code Civ.Proc. art. 865.
[3] It is possible to draw a distinction between Pargas and the present case on the grounds that the bank in question here is the depository, cashing, and collecting bank, and not the bank on which the three checks in question were drawn, whereas the bank in Pargas was the drawee (or payor) bank. Section 3-419(3) provides:

"Subject to the provisions of this Title concerning restrictive indorsements a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable to the true owner beyond the amount of any proceeds remaining in his hands."
This provision would appear to limit the liability of a bank, other than the drawee (or payor) bank, which cashes under a forged endorsement, provided that such bank has (a) acted in good faith and (b) met the standards of reasonable conduct of the banking community. It is important to note that this provision would not prevent suit by the true owner against the collecting bank (i.e., the limiting provision does not remove the cause of action granted by section 3-419(1)); rather, this provision enables a collecting bank to raise as a defense its good faith and reasonableness.
The bank in the present case did not present such a defense, nor do we believe it could successfully have done so, in view of the record. We note, furthermore, that most jurisdictions have permitted the payee to recover directly from the cashing or collecting bank under section 3-419(1) and have declined to apply section 3-419(3), because the entire thrust of this area of UCC law is that ultimate liability will be borne by the party who takes from the forger, with this party then having its sole remedy against the forger. See Cooper v. Union Bank, 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973). See also Comment, Payee v. Depository Bank: What is the UCC Defense to Handling Checks Bearing Forged Indorsements?, 45 U.Colo.L.Rev. 281, 289-304 (1974). The applicability of section 3-419(3) has not been raised by defendant bank in this case, and we decline to rule on its utility for Louisiana courts.
[4] We do not alter the rules regarding employee forgeries codified under LSA-R.S. 10:3-405. Under that section, which encompasses the longstanding "fictitious payee" and "imposter" rules, the company drawing the instrument remains ultimately liable to the drawee (or payor) bank. In the situation that we address today, the payee is properly named, but the endorsement is by one unauthorized to endorse.
[5] The pertinent one-year prescriptive period of repealed article 3536, which was in force at the time of the forgery, remains unchanged in the new article 3492, effective January 1, 1984.
[6] The pertinent provision of repealed article 3540, in force at the time the checks became payable, remains unchanged in article 3498, effective January 1, 1984.
[7] Repealed article 3544 was, in substance, replaced by article 3499, effective January 1, 1984.
[8] The trial judge in Turcich had ruled that the action was in tort, and that the one-year prescriptive period applied.
[9] LSA-R.S. 10:4-406(4) provides a three-year limitation for reporting unauthorized endorsements to the payor (or drawee) bank, after which the customer is precluded from asserting the unauthorized signature in a suit against his or her bank. Although this provision is inapplicable here, we note that Top Crop would have met the three year period had this statute been applicable.
[10] The trial judge in this case found the five-year period illustrated by Strother inapplicable because Top Crop has no "contractual relationship" or bank account with the Bank of Southwest Louisiana. The discussion of contractual relationship in Strother concerned the applicability of the ten-year prescriptive period for personal actions. The five-year bills and notes prescriptive period does not depend upon the presence of a contractual relationship between the parties.
[11] The receipt of eighteen $100 bills from Williams as partial proceeds from one of the cashed checks is supported by the testimony of de la Houssaye (R. at 43, 48, 55); Anna Lee Reed, Top Crop's office manager (R. at 64); and Wiladean Palermo, Top Crop's bookkeeper (R. at 69-70). Williams also testified that he occasionally handed cash proceeds from the forged checks to personnel of Top Crop, but he was unable to recall exact amounts.