**LINCOLN NATIONAL BANK & TRUST COMPANY, Plaintiff-Appellee,**

v.

**The BANK OF COMMERCE, Defendant-Appellant.**

**NEW YORK LIFE INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**The BANK OF COMMERCE, Defendant-Appellant.**

Nos. 84–4716, 84–4717.

United States Court of Appeals, Fifth Circuit.

July 1, 1985.

Cook, Yancey, King & Galloway, F. Drake Lee, Jr., Schober, Clawson & Brabham, Russell O. Brabham, Shreveport, La., for defendant-appellant.

Blanchard, Walker, O'Quin & Roberts, Roy S. Payne, M. Allyn Stroud, Shreveport, La., for plaintiff-appellee.

Before REAVLEY, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Bank of Commerce of Shreveport, Louisiana appeals from a judgment holding it liable for the face amount of a series of checks it cashed under forged endorsements. We must decide whether Louisiana law affords the payee of such checks a claim against the cashing bank, and if it does, whether the checks must have first come into his possession before that cause of action accrues. We conclude that such a payee may bring suit so long as he once had possession of the checks or the maker has actually or constructively delivered them to him. We reverse the decision of the district court and remand the case for consideration of other issues pretermitted by its contrary resolution of the point we decide today.

I

-1-

The 38 stipulated facts on which this case was tried tell the story of H. Wade Crouch, who was both an insurance agent and a thief. He combined skills from both professions in an interesting scheme which can be summarized briefly as follows:

From 1967 to 1980, Crouch was employed in various positions by the New York Life Insurance Company and Lincoln National Insurance Company. During that time he

sold policies of life insurance to Stan's Record Service, Inc. and Stan's Record Service of Florida, Inc., hereinafter "Stan's," insuring the lives of certain executives of those corporations.

After these policies were issued, Crouch prepared and forwarded to the insurers a series of fraudulent applications for loans against the cash value of the policies. On each loan application Crouch forged the signatures of Stanley J. Lewis and Francis R. Lewis, the president and vice-president of both corporations. The insurers accepted the applications and sent checks payable to Stan's, not *to* Stan's, but to Crouch, because Crouch had supplied the insurance companies with an address different from the actual address of the corporate payees. When Crouch received the checks, he forged the Lewises' endorsements on them, then added his own true endorsement, and deposited the checks into his personal savings account at the Bank of Commerce.

Each of the checks deposited to Crouch's account was presented to an officer of the Bank for approval of the deposit, pursuant to the Bank's practice of requiring such approval on all instruments in excess of $500.00. The Bank, however, never contacted the corporate payees to verify the authority of the endorsers and did not require Crouch to present evidence of the propriety of the endorsements, despite the fact that the checks were made out to the corporate entities and endorsed in the name of the corporate officers only.[1] The Bank officers knew that Crouch was a personal friend of Stanley Lewis and that he wrote insurance policies for Stan's, and thus wrongly assumed that Crouch had authority to cash checks on behalf of Stan's.

Crouch's scheme went undetected for seven years, but for reasons not told to us it was discovered in 1980. New York Life immediately credited the cash value of all loans to Stan's policy accounts and became subrogated to Stan's rights against all parties responsible for the fraudulent loss. Lincoln National Insurance Company did the same. Lincoln National was in turn reimbursed by Lincoln National Bank, which had paid the Lincoln National checks, and Lincoln National Bank obtained the insurer's subrogation rights. New York Life and Lincoln National Bank then sued the Bank of Commerce in 1981.

–2–

The district court held the Bank liable to the plaintiffs under La.Rev.Stat.Ann. § 10:3–419 (West 1983), which provides in pertinent part: "[W]hen a person pays an instrument on a forged endorsement, he is liable to the true owner." The court rejected the Bank's argument that Section 3–419 did not change prior Louisiana law, which would have barred recovery on these facts, and after considering the Bank's proffered defenses of prescription,[2] contributory negligence,[3] and the "imposter" or "ficticious

---

1. The Bank makes much of the fact that Crouch endorsed at least two of the dozens of checks at issue with the typewritten notation "Stan's Record Service, Inc." before forging the Lewises' signatures and adding his own. This circumstance does little to aid the Bank's case, however, for even where the endorsement by a corporate payee is not irregular on its face, the Louisiana courts have held that it is commercially unreasonable for a cashing bank to fail to inquire into the authority of one who endorses beneath such blank endorsements and then attempts to deposit the proceeds of the check into his personal account. *See Pargas, Inc. v. Estate of Taylor,* 416 So.2d 1358, 1361 (La.App. 3d Cir.1982); *see also Top Crop Seed & Supply v. Bank of Southwest Louisiana,* 457 So.2d 273, 277 n. 4 (La.App. 3d Cir.1984).

2. The Bank argued that if there was a cause of action on the checks, it sounded in tort and was governed by Louisiana's one-year prescriptive statute, La.Civ.Code art. 3492.

3. La.Rev.Stat. § 10:3–406 provides:
   *Negligence contributing to alteration or unauthorized signature*
   Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

payee" rule,[4] dismissed them as inapplicable. Judgment was entered for New York Life in the amount of $123,262.00 and for Lincoln in the amount of $54,397.49. The Bank renews all of its arguments on appeal.

## II

We first address whether Stan's, as payee of the checks cashed by the Bank of Commerce under Crouch's forged endorsements, has a claim against the Bank under Louisiana law. This is an issue of no small importance. Although Stan's is not a party to this suit, both New York Life and Lincoln recovered below, not in their own capacities, *but as subrogees of Stan's*.[5] We conclude that although the Louisiana law applicable to this case was substantially changed by the legislature's adoption of the Uniform Commercial Code, on these unique facts, Stan's had no claim against the Bank.

–1–

Before Louisiana adopted Articles 3 and 4 of the U.C.C. in 1975, the law of the state was clear that a payee of a check cashed under a forged endorsement had a cause of action against only the drawer of the check; he could not sue the depository or cashing bank, a bank in the collection stream, or the drawee/payor bank. The Louisiana Supreme Court explained the rule in its decision in *Smith v. Louisiana Bank & Trust Co.*, 272 So.2d 678 (La.1973):

> [T]he payee's action is properly against the drawer of the check because .... "the check has never in reality been paid." Just as the payee has a cause of action against the drawer, the drawer has a

cause of action against the drawee to compel the removal of an unauthorized debit. The drawee, in turn, has an action against the collecting bank on its endorsements. In turn, the collecting bank has an action against the cashing bank on its endorsement. The cashing bank must then go against the forger to recover the funds.

*Id.* at 683.

The required path of actions was undeniably circuitous, but it eased the problem presented by defenses available to the parties in a commercial chain. Nonetheless, the rule followed in *Smith* was contrary to the weight of then existing authority on the point and was rooted primarily in Louisiana's long adherence to the Uniform Negotiable Instruments Laws. *See id.* at 684 (Tate, J., concurring).

The rule of U.C.C. section 3–419 is quite different from that announced in the *Smith* decision. The section provides:

> (1) An instrument is converted when
>
> .      .      .      .      .
>
> (c) it is paid on a forged indorsement.
> (2) In an action against a drawee under Subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under Subsection (1) the measure of liability is presumed to be the face amount of the instrument.
> (3) Subject to the provisions of this title concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the

---

4. La.Rev.Stat. § 10:3–405 provides:

   *Imposters; signature in name of payee*
   (1) An endorsement by any person in the name of a named payee is effective if
   (a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or
   (b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or
   (c) an agent or employee of the maker or drawer has supplied him with the name of the

payee intending the latter to have no such interest.

5. The pleadings below were not so narrowly drawn. The subrogation issue became the focus of the case shortly before trial when the parties stipulated that the plaintiffs were subrogated to the rights of Stan's, the payee of the checks. The plaintiffs thereafter addressed all of the Bank's defenses by asserting the rights of Stan's, and not their own rights. The district court apparently decided the case on that basis.

business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands. Section 3–419(1) plainly authorizes recovery by the payee of a check against a drawee bank that pays the item on a forged endorsement, and although the import of section 3–419(3) is less clear, it at the least provides the payee a right of action against the depository bank and the banks in the collection stream to the extent that any of these banks still retain proceeds from the check or have failed to follow reasonable commercial standards in handling it. *See* J. White & R. Summers, *Uniform Commercial Code* § 15–4, 589–94 (1980).

■ Louisiana adopted section 3–419 of the Code along with most of Articles 3 and 4 in 1975, but modified the provision slightly to reflect the fact that the civil law does not recognize the common law concept of "conversion." Thus, subsection (1) reads: "(1) When . . . a person pays an instrument on a forged indorsement, he is liable to the true owner." The statute is in all other respects identical to the U.C.C. version, save for the deletion of the phrase "in conversion or otherwise" from subsection (3). We agree with the district court that in light of the legislature's enactment of section 3–419, the rule of *Smith v. Louisiana Bank and Trust Co.* is no longer good law.

The Bank urges us to construe section 3–419 in light of *Smith* and to hold that a payee has no direct right of action against a depository bank when it pays his check on a forged endorsement. The Bank relies on the deletion of the "conversion" language from Louisiana's version of section 3–419 and the decision of the Massachusetts Supreme Judicial Court in *Stone & Webster Engineering Corp. v. First National Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358 (1962). In *Stone & Webster* the court, construing U.C.C. section 3–419, denied the drawer of a check a direct right of action against a collecting bank that cashed the check over a forged endorsement. The *Stone & Webster* court reasoned, as had the Louisiana Supreme Court in *Smith*, that denying a direct action would facilitate the assertion of defenses available to the various parties in the commercial chain.

We find these arguments unpersuasive. First, despite the deletion of the "conversion" language in section 3–419, the provision could scarcely be more plain that a cashing, collecting or drawee bank who pays a check on a forged endorsement is liable to its true owner. Nor does the decision in *Stone & Webster* give us pause, for the Massachusetts court was concerned with a cause of action asserted by a *drawer* of a check cashed on a forged endorsement rather than one asserted by the payee of the check. Substantially different policy concerns are at stake when the drawer, rather than the payee, brings a direct action. *See* J. White & R. Summers, *supra*, § 15–4, 586–88. *See also* Annot., 99 A.L. R.2d 637 (1965) (collecting cases and describing split of authority on drawer's right to recover against depository or collecting banks).

A recent decision by an intermediate appellate court in Louisiana confirms our conclusion that section 3–419 overturned the *Smith* decision. In *Top Crop Seed & Supply Co. v. Bank of Southwest Louisiana*, 457 So.2d 273 (La.App. 3d Cir.1984), the court held that section 3–419(1) permits the payee or other true owner of an instrument paid on a forged endorsement to bring a direct action against the cashing or depository bank. *See id.* at 277. Although it has been argued that subdivision (3) of section 3–419, quoted *supra*, limits the circumstances when a depository or collecting bank may be sued, *see* J. White and R. Summers, *supra* at 591–94, the Louisiana court construed that part of the statute as an affirmative defense:

> This provision would appear to limit the liability of a bank, other than the drawee (or payor) bank, which cashes under a forged endorsement, provided that such bank has (a) acted in good faith and (b) met the standards of reasonable conduct

of the banking community. It is important to note that this provision would *not* prevent suit by the true owner against the collecting bank (i.e. the limiting provision does not remove the cause of action granted by section 3–419(1) ); rather, this provision enables a collecting bank to raise *as a defense* its good faith and reasonableness.

*Id.* at 276–77 n. 3 (emphasis original). Such a construction of section 3–419(3) appears sound to us and has been adopted by other states as well. *See, e.g., Citizens State Bank v. National Surety Corporation,* 199 Colo. 497, 612 P.2d 70 (1980).

■ We conclude that the law in Louisiana today is substantially different from that announced in the *Smith* decision twelve years ago. Under section 3–419 as adopted in Louisiana, a payee or other true owner of an instrument that is cashed under a forged endorsement may sue directly the drawee/payor bank, the depository/cashing bank, or any of the banks in the collection chain. The latter two defendants have available the affirmative defenses described in section 3–419(3), but the liability of the drawee bank is absolute.

–2–

We nevertheless face another problem in applying the principles of section 3–419 to a payee such as Stan's, who never had possession of the improperly cashed checks. The law as we have broadly summarized it above suggests that *all* payees of checks are "true owners" of the instruments under section 3–419. The peculiar facts of this case, however, cast doubt on that assumption. Otherwise stated, we think there is a substantial question whether Stan's should qualify as a "true owner" of the checks at issue here when they were never in its possession and indeed, when Stan's never knew of the checks' existence until many years after their issuance.

The few appellate decisions on point differ. The courts of Florida, Kentucky, California and Illinois have required possession by the payee, or at least actual or constructive delivery to him, before allowing him to maintain an action such as that asserted here. *City National Bank of Miami v. Wernick,* 368 So.2d 934 (Fla.Dist.Ct.App. 1979) (construing U.C.C. § 3–419); *Winn v. First Bank of Irvington,* 581 S.W.2d 21 (Ky.App.1978) (same); *Jones v. Bank of America Nat'l Trust & Savings Ass'n,* 49 Cal.App.2d 115, 121 P.2d 94 (1942) (pre-Code law); *Nelson v. Kaspar American State Bank,* 364 Ill. 121, 4 N.E.2d 14 (same) (1936). The courts of Georgia, Indiana, and Alabama have rejected that requirement. *Thornton & Co. v. Gwinnett Bank & Trust Co.,* 151 Ga.App. 641, 260 S.W.2d 765 (1979) (construing U.C.C. § 3–419); *Allen v. M. Mendelsohn & Son,* 207 Ala. 527, 93 So. 416 (1922) (pre-Code law); *Indiana National Bank v. Holtsclaw,* 98 Ind. 85 (1884) (same). *See generally* Annot., 23 A.L.R. 4th 855 § 3 (1983); Annot., 100 A.L.R.2d 670 § 5 (1965).

The courts requiring possession have reasoned that until a check or other instrument is delivered to a payee, he is not a holder and has no rights in it and should be relegated to a suit against his drawer on the underlying obligation. As explained by the Court of Appeals of Kentucky in *Winn:* "Here, the payee of th[e] check … is not given relief because he can generally have the alternative of suing on the underlying obligation of the check.... In the absence of physical delivery, the payee cannot come into the ordinary channel of commerce so as to give it standing to sue." 581 S.W.2d at 23. The courts that have rejected the possession requirement reason that the inclusion of a party as payee of a check gives him a right to possession that is sufficient to support an action for conversion.

■ We think the requirement that a check must come into the possession of a payee before he becomes its "true owner" under section 3–419 is one which the Louisiana courts would adopt if presented the question. First, it has been long established in Louisiana and elsewhere that a payee of a negotiable instrument must have the instrument in his possession before he becomes a holder. *See, e.g., Freeland v. Carmouche,* 177 La. 395, 148 So.

658 (La.1933); *see generally* J. White & R. Summers, *supra,* § 14–3. To allow a payee of a check to recover under section 3–419 as its true owner when he never had possession of the instrument would be in derogation of that requirement, and would recognize rights of the payee in the check where previously he had none apart from the underlying obligation it represented.

There are practical considerations as well. Where the check has never come into the possession of its payee, there is a greater chance that the forged endorsement is traceable to the negligence of the drawer, an issue which could not easily be litigated in a direct suit between the payee of a check and the depository, collecting or drawee bank, assuming that issue could be litigated at all in such suits. This consideration has prompted commentators to favor the majority view that possession of the check is required. *See* J. White & R. Summers, *supra,* § 15–4 at 588.

■ We hold that Stan's was not a "true owner" of the checks appropriated by Crouch and cashed by the Bank under his forged endorsements, or at least not a "true owner" for the purpose of section 3–419. We do not suggest that actual physical possession is required, but actual or constructive delivery of the checks must occur.[6] Here the mailing of the checks by the insurance companies to Stan's at the false address provided by Crouch, a third party who was not Stan's agent or employee, was not delivery to Stan's and did not

confer upon Stan's an ownership interest in the checks.

■ In so holding, we do not resurrect the *Smith* decision in the face of its legislative interment in section 3–419, but rather recognize what we think the Louisiana courts would conclude is a needed limitation on the cause of action created by the statute. The rule will not defeat recovery by innocent victims such as Stan's, but will instead direct their suits to the parties most likely responsible for the loss. In addition, the rule will prevent attempts by negligent drawers, such as the insurance companies here, to sidestep the issue of their negligence by subrogating to the rights of innocent payees or by persuading the payees to seek recovery directly from the banks who handled the checks.

### III

■ Although we conclude that New York Life and Lincoln may not recover from the Bank as subrogees of Stan's, we do not suggest that the Bank should necessarily escape liability here. Not only has the Bank cashed the checks at issue here over a forged endorsement; the manner in which it handled those checks was manifestly commercially unreasonable.[7] Because the district court allowed the plaintiffs to recover based on Stan's rights as payee, it did not consider other possible theories of recovery raised by the pleadings and the defenses that may apply.[8]

---

**6.** We add this qualification because many § 3–419 forged endorsement cases arise in the joint payee situation. Courts addressing the delivery problem in that context have held that "delivery to one joint payee may be deemed constructive delivery to all payees." *See Cook v. Great Western Bank & Trust,* 141 Ariz. 80, 685 P.2d 145 (1984).

**7.** We agree with the district court that it was commercially unreasonable for the Bank to accept checks made out to Stan's, but endorsed irregularly, without first inquiring about the authority of the endorsers, particularly since Crouch was depositing the checks into his personal account. Similar practices have been held to be commercially unreasonable *as a mat-*

ter of law. *See Aetna Casualty & Surety Co. v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721 (1981).

We also agree with the district court that the "impostor" or "ficticious payee" defense of La. Rev.Stat. § 10:3–405, *see supra* n. 4, does not afford the Bank a defense. The rule is limited by its terms to cases where the endorsement by the impostor is that of the named payee; it does not apply to the irregular endorsements at issue here. *See* La.Rev.Stat. § 10:3–405, Comment 2. *See also Top Crop,* 457 So.2d at 277 n. 4.

**8.** We cannot tell from the record whether, by asserting the rights of Stan's, the plaintiffs have waived their right to recover on other theories. We leave that issue for the district court.

These include the question whether New York Life, as drawer of the improperly cashed checks, may recover against the Bank under section 3–419 or as the beneficiary of the Bank's warranties to New York Life's drawee bank,[9] and whether La.Rev.Stat. § 10:4–406 bars some or all of the plaintiffs' claims.[10] Such issues should be addressed by the district court in the first instance. We hold only that La.Rev.Stat. § 10:3–419 does not provide a cause of action for a payee of checks cashed under a forged endorsement where the checks have never come into his possession and have not been delivered to him, either actually or constructively.

REVERSED and REMANDED.

9. We express no opinion on whether the Louisiana courts would permit such an action, and note only that there is a split of authority on the question. *Compare Stone & Webster Engineering Corp. v. First National Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358 (1962), *with Allied Concord Financial Corp. v. Bank of America*, 275 Cal.App.2d 1, 80 Cal.Rptr. 622 (1969). *See generally* Annot., 99 A.L.R.2d 637 (1965) and cases cited therein. Lincoln National Bank's right to sue the Bank of Commerce on the Bank's warranties of good title on the improperly cashed checks is well-established. *See* La.Rev.Stat. § 10:4–207(1)(c).

10. Section 4–406 provides in pertinent part:
    (4) ... [A] customer who does not within ... 3 years [from the time he receives his bank statement] discover and report any unauthorized endorsement is precluded from asserting against the bank such unauthorized signature or endorsement....
    (5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim.
    Although the provision by its terms is limited to suits between a drawee bank and its customer, there is authority allowing a depository bank to assert the defense against a drawer who is *not* its customer. *See, e.g., Insurance Co. of North America v. Purdue National Bank of Lafayette*, Ind.App., 401 N.E.2d 708 (1980); *Sun 'N Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978).
    In any event, subdivision (5) of section 4–406 plainly applies to plaintiff Lincoln National Bank, since it failed to assert its section 4–406 defense against its customer, Lincoln National Insurance Company. The district court should determine whether the defense provided in section 4–406(4) may be asserted against New York Life, and which, if any, of the checks paid by Lincoln are not barred by section 4–406(5).